399 So.2d 1205 (1981)
Henry E. THOMASSON et ux.
v.
A. K. DURNIN CHRYSLER-PLYMOUTH, INC., et al.
No. 14167.
Court of Appeal of Louisiana, First Circuit.
May 26, 1981.
*1206 John W. Degravelles, Baton Rouge, for Henry E. Thomasson and Peggy Jo. Thomasson.
Carey J. Guglielmo, Baton Rouge, for Chrysler Motors Corporation.
Robert W. Smith, Baton Rouge, for A. K. Durnin Chrysler-Plymouth, Inc., and Fireman's Fund American Insurance Companies.
Before COVINGTON, CHIASSON and LEAR, JJ.
COVINGTON, Judge.
This is a suit by a husband and wife, Henry E. Thomasson and Mrs. Peggy Jo Thomasson, for personal injuries and damages resulting from a one car accident *1207 caused by products liability[1] in defective design and construction of the manufacturer, Chrysler Motors Corporation, and the negligence in failing to inspect and repair the automobile of the dealer, A. K. Durnin Chrysler-Plymouth, Inc., covered by its liability insurer, Fireman's Fund American Insurance Companies, who were named as defendants. All parties have appealed the judgment of the trial court. We have carefully read the record, and find the written reasons of the trial judge, a copy of which is attached, correctly dispose of the factual and legal issues presented by the instant case. There is a reasonable factual basis for the finding of the trier of fact; and we have determined that the record establishes that the finding is not manifestly erroneous.[2]
For the reasons expressed by the trial judge, which we adopt as our own, the judgment appealed is affirmed; the costs to be borne by the defendants.
AFFIRMED.

WRITTEN REASONS FOR JUDGMENT
Plaintiffs, Henry and Peggy Thomasson, were involved in a one car automobile accident in August, 1975, when the front lower suspension of their 1974 Plymouth Fury collapsed, causing Mr. Thomasson to lose control of the vehicle. Plaintiffs bring this suit for damages allegedly caused by the accident against Chrysler Corporation, the manufacturer of the automobile, A. K. Durnin Chrysler-Plymouth, Inc., the dealer who sold the automobile to them, and Fireman's Fund American Insurance Companies, the insurer of A. K. Durnin. Defendants deny liability, and alternatively plead the contributory negligence and assumption of the risk of Mr. and Mrs. Thomasson. Defendants also vigorously deny that certain mental and physical complaints of Mrs. Thomasson are causally related to the accident. A. K. Durnin and Fireman's Fund seek indemnification from Chrysler in a third party demand for any damages they should be condemned to pay to the plaintiffs.
The 1974 Plymouth Fury was originally purchased by the Thomassons from A. K. Durnin in December of 1974, and was one of a group of vehicles manufactured by Chrysler which contained a defect in the lower control arm assembly. A recall campaign was initiated by Chrysler in January of 1974 after it learned of the defect and its potential danger. As a result of the campaign, A. K. Durnin received notice of the category of vehicles included in the recall, i.e., 1974 model year C body passenger cars shipped prior to January 4, 1974 and manufactured during a specific time frame, although the particular vehicle sold to the Thomassons was not included in computer print-out sheets accompanying the correspondence. Relying on those print-out sheets which listed vehicles by serial number, A. K. Durnin made no effort to locate vehicles not listed therein, or to screen vehicles in the affected category when brought in for repairs or servicing.
The Thomassons had experienced steering related difficulties on several occasions, which they brought to the attention of A. K. Durnin's employees when the auto was brought in for repairs. The defect which caused the accident was not discovered by A. K. Durnin, nor were the plaintiffs ever notified by either A. K. Durnin or Chrysler, prior to the accident, of the dangerous condition of their automobile.

LIABILITY OF CHRYSLER
The liability of a manufacturer under Louisiana law does not rest on proof of negligent acts or omissions when the harm caused is the result of a manufacturing or design defect. Plaintiffs must simply prove that a product is unreasonably dangerous to normal use. Chappuis v. Sears, Roebuck & Company, 358 So.2d 926, (La. 1978). In this case, it is clear that the defective lower control arm assembly, which could break in service and cause loss *1208 of steering, was unreasonably dangerous to normal use. The commencement of the recall campaign by Chrysler could not absolve it of its responsibility, nor could it operate to pass on the sole responsibility to its dealer. Therefore, Chrysler is liable for any damages which were caused by its defective product. The Court finds no evidence that plaintiffs assumed the particular risk or even knew of its existence prior to the accident. Although contributory negligence is not a defense to a products liability action, the Court further notes that there is no evidence of any negligence on the part of plaintiffs.

LIABILITY OF A. K. DURNIN
The duty of a seller of a dangerously defective product is less stringent than that of a manufacturer. Ordinarily, he owes only a duty of reasonable inspection and is not required to search for latent, nonapparent defects. Hunt v. Ford Motor Company, 341 So.2d 614 (La.App.1977). However, under certain peculiar circumstances, that duty may be more exacting. For example, in Ford, supra, at page 619 the Court observed:
"... Where a manufacturing defect causes an accident and the dealer has prior notice of difficulties relating to the defect with an opportunity to discover and correct the defect, in order to avoid liability for damages occasioned by the defect the dealer has the burden of showing he made reasonable and adequate efforts to discover the source of the difficulties and that the defect could not be discovered in spite of such efforts."
In this case, the dealer was apprised of problems related to the steering of the vehicle by the Thomassons, which put them on notice that that particular vehicle had difficulties. Although the defect in the vehicle could not, according to expert testimony, have been discovered without disassembly of the defective parts, A. K. Durnin had been put on notice by Chrysler's recall campaign literature that the particular type of vehicle sold to the Thomassons was suspect. A simple inspection of the date plate on the inside door frame would have shown the date of manufacture. The dealer could thereby easily ascertain that this vehicle was the subject of the recall, even without specific notice of the serial number. Furthermore, A. K. Durnin was aware, or should have been aware, of the magnitude of the danger created by the defective lower control arm assembly.
The combination of those factors; the notice from the manufacturer, the specific complaints from the owner, the ease of discovery, the opportunity to correct and the magnitude of the risk, should have incited A. K. Durnin to proceed beyond a routine inspection or repair in the case of the Thomasson vehicle. Under those circumstances, it was not sufficient for A. K. Durnin to simply follow the procedure outlined in the recall literature, especially when the accompanying lists of vehicles were known by them to have been incomplete in the past. Hence, because of its negligent breach of duty, A. K. Durnin is solidarily liable with Chrysler for the damages caused by the failure of the front suspension lower control arms.[1]

THIRD PARTY DEMAND OF A. K. DURNIN
Defendant, A. K. Durnin, has filed a third party demand against Chrysler, seeking total indemnification for any amounts it should be cast in judgment to the plaintiffs. However, A. K. Durnin was found liable, not by virtue of the manufacturing defect for which Chrysler was responsible, but by virtue of independent acts of negligence which contributed to the accident. Therefore, third party plaintiff's own negligence precludes any right to indemnification. Trahan v. Highlands Insurance Co., 343 So.2d 1163, (La.App.1977).

*1209 DAMAGES
There is little dispute concerning the relatively minor and direct physical injuries the plaintiffs sustained as a result of the accident. Mr. Thomasson suffered a muscle and ligamentous strain to the neck region, for which he will be awarded $500.00. Although a claim was made for lost wages attributable to those injuries, this was not proven by a preponderance of the evidence. Mrs. Thomasson's physical injuries which were concededly caused by the accident consisted of a muscle and ligamentous strain to the cervical spine and injuries to the wrist, for which she will be awarded $2000.00.
However, it is not those physical injuries which constituted the most serious bone of contention among the parties to this lawsuit. The chief area of dispute and the topic which produced the most contradictory testimony involved plaintiffs' allegation that the accident activated a pre-existing psychological disorder in Mrs. Thomasson, and rendered her totally disabled from any type of employment.
Mrs. Thomasson had an abundance of physical problems before the accident which may or may not have been psychological in origin. Primary among those ailments were chronic vomiting, diarrhea and nausea. The evidence concerning whether her medical problems were enhanced because of anything directly related to the accident was conflicting and contradictory. The Court is of the opinion that the plaintiff did not prove by a preponderance of the evidence that her purely physiological problems were caused by the accident, other than the ligamentous strain and wrist injury. The only thing clear from the evidence is that Mrs. Thomasson had many problems and difficulties prior to the accident and that she will continue to have them.
A resolution of the purely physiological problems and their causal connection to the accident does not, however, resolve the psychological difficulties experienced by Mrs. Thomasson. The alleged phobia of driving an automobile was described by the doctors who testified as being an unreasonable fear. The record clearly shows that plaintiff had psychological problems prior to the accident. The Court finds that the plaintiff had proved as a fact that those psychological problems were aggravated by the accident, however unreasonable that aggravation would be for a person of normal mental health, given the minor nature of the accident.
No expert gave a good reason why such a slight accident should cause such a major mental problem. That the reaction was unreasonable is the very definition of her problem. However, the defective 1974 Plymouth Fury was carrying a very mentally fragile passenger when the accident occurred. And although it would not have affected a normal person, such as Mr. Thomasson, who was more directly involved as the driver, it did have a lasting, adverse psychological effect on Mrs. Thomasson. The Court further concludes that this enhanced psychological problem did diminish her capacity for employment. The Court does not accept the astronomical figures, which are purely speculative and theoretical, presented by plaintiffs' expert economist. They were based on assumptions about Mrs. Thomasson's past earning record which were not supported by the facts in the record, and more importantly, they did not take into consideration the greatly diminished capacity for employment which Mrs. Thomasson had and will continue to have because of her other medical problems. Therefore, the Court believes an award should be made for lost wages and for loss of future wages.
The enhanced mental disorders resulting in the phobia, which brings about a loss of wages, also brings about damages for an increased amount of mental anguish. The medical testimony indicates that the physical problems of nausea, vomiting and diarrhea are manifestations of the mental disorders. These symptoms clearly existed prior to the accident, and on balance, the best view of the evidence seems to be that they were of both mental and physiological origin. However esoteric and gossamer these notions may be for lawyers and *1210 judges, they nevertheless constitute real suffering for a person in Mrs. Thomasson's condition. The Court believes an award of $17,500.00 is appropriate for Mrs. Thomasson's mental anguish, suffering, related lost wages and future lost wages.
Mrs. Thomasson will require future treatment by a psychologist, Dr. Silva, for her aggravated mental problems. The Court believes $1000.00 is sufficient to cover those anticipated costs to Mr. Thomasson, as head and master of the community of acquets and gains. In addition, Mr. Thomasson will receive an award for certain special expenses he incurred as head and master of the community, which were reasonably related to the accident. He is entitled to be reimbursed $237.59 for damages to the automobile, $34.46 for transportation expenses, $85.29 for room and board and for all medical expenses as shown by the bills for services introduced into the record at trial.
Numerous expert witnesses testified at trial and through deposition in this matter. Their expert witness fees are set as follows:
A. J. McPhate-$100.00
Jan Dugger-$100.00
Dr. John Chisholm-$100.00
Carol Abby-$100.00
Darrel Wheat, psychological therapist-$100.00
Dr. Curtis Steele-$150.00
Dr. Frank Silva-$150.00
Dr. James Johnson-$300.00.
Therefore, judgment is rendered in favor of plaintiff, Peggy Thomasson, and against defendants, A. K. Durnin Chrysler-Plymouth, Inc., Chrysler Corporation and Fireman's Fund American Insurance Companies, in solido, in the amount of $19,500.00; in favor of plaintiff, Henry E. Thomasson, individually, and against defendants, A. K. Durnin Chrysler-Plymouth, Inc., Chrysler Corporation and Fireman's Fund American Insurance Companies, in solido, in the amount of $500.00; in favor of plaintiff, Henry E. Thomasson, as head and master of the community of acquets and gains, and against defendants, A. K. Durnin Chrysler-Plymouth, Inc., Chrysler Corporation and Fireman's Fund American Insurance Companies, in solido, in the amount of $1357.35, plus all medical expenses as shown by bills for services introduced into the record at trial; all of the above sums to bear legal interest from the date of judicial demand until paid.
Further judgment is rendered in favor of third party defendants, Chrysler Corporation and Fireman's Fund Insurance Companies, and against third party plaintiff, A. K. Durnin Chrysler-Plymouth, Inc., dismissing the third party demand.
Further judgment is rendered setting the expert witness fees of A. J. McPhate, Jan Dugger, Dr. John Chisholm, Carol Abby and Darrel Wheat at $100.00; of Dr. Curtis Steele and Dr. Frank Silva at $150.00, and of Dr. James Johnson at $300.00.
Judgment will be signed accordingly.
NOTES
[1] Defective front suspension lower control arm assembly on 1974 Plymouth Fury automobile.
[2] Reck v. Stevens, 373 So.2d 498 (La. 1979); Arceneaux v. Domingue, 365 So.2d 1330 (La. 1978).
[1] As discussed above, the affirmative defenses of assumption of the risk and contributory negligence are not well-founded.