LANDRIEU, J.,
dissents with reasons.
_JjI would affirm the trial court. The majority’s decision expands Louisiana law by creating a duty on the part of a non-manufacturer seller of a vehicle to warn foreseeable users of the “danger inherent” in the use of a vehicle that contains an “inadequate” manufacturer’s warning label, regardless of whether the presence of that label (or the absence of a different one) renders the vehicle, or any of its component parts, defective for normal use. Without proof of a defect, there can be no duty to warn because, in the absence of a defect, there is nothing to warn about.
Whether a duty is owed is a question of law. Harris v. Pizza Hut of La., Inc., 455 So.2d 1364, 1371 (La.1984). In the instant case, the only issue decided by the trial court on summary judgment was whether a duty exists under the circumstances of this case.
|2To determine the existence of a duty, the relevant inquiry is whether the plaintiff has any law (statutory, jurisprudential, or arising from general principles of fault) to support the claim that the defendant owed him a duty. Lemann v. Essen Lane Daiquiris, Inc., 2005-1095, p. 8 (La.3/10/06), 923 So.2d 627, 633. As this court has recognized, our summary judgment procedure is well-suited to the resolution of questions of law. Hendrickson v. Guillory, 2008-0930, p. 4 (La.App. 4 Cir. 5/18/09), 15 So.3d 256, 258. Where there are no material facts in dispute that might challenge the existence of a duty, summary judgment is appropriate. See, e.g.: Lemann v. Essen Lane Daiquiris, Inc., 2005-1095 (La.3/10/06), 923 So.2d 627. As the Supreme Court stated in Lemann, when analyzing whether certain facts are material to the existence of a duty, one must look to the substantive law applicable to the case. Lemann v. Essen Lane Daiquiris, *677 Inc., 2005-1095, p. 8 (La.3/10/06), 923 So.2d 627, 633.
In this case, it is clear that federal law does not impose a duty to warn upon Lakeside because it is undisputed that Ms. Alexander’s vehicle complied with FMVSS 208 [1] the federal standard regarding airbag warnings required in vehicles at the time the 1995 Corolla was manufactured. The duty found by the majority opinion therefore must be based upon the Louisiana Products Liability Act, La. R.S. 9:2800 et seq., [“LPLA”], the jurisprudence interpreting it, and/or the general principles of negligence stated in the Louisiana Civil Code. However, none of those sources impose a duty to warn in the absence of a dangerous or defective product.
Enacted in 1988, the LPLA provides the exclusive theories of liability under which a claimant may recover from a manufacturer for damage caused by the manufacturer’s product. La. R.S. 9:2800.52. Pursuant to the statute, the manufacturer’s duty is to “use reasonable care” to provide an adequate warning of |3a product’s dangerous characteristics that may cause harm to users of the product after it has left the manufacturer’s control. La. R.S. 9:2800.57(C). In the instant case, it is undisputed that Lakeside is not the manufacturer of Ms. Aexander’s vehicle or of its airbags.
Lakeside does qualify as a “seller” under the LPLA. The Act defines a “seller” as “a person or entity who is not a manufacturer and who is in the business of conveying title to or possession of a product to another person or entity in exchange for anything of value.” La. R.S. 9:2800.53(2). The LPLA itself does not mention the term “non-manufacturer seller,” nor does it contain any provision establishing any theory of liability or imposing any duty upon a seller as opposed to a manufacturer.
However, the post-LPLA jurisprudence has recognized that so-called “non-manufacturer” or “non-manufacturing” sellers, under certain circumstances, may have a duty to warn of defects in a product under general principles of negligence. See, e.g.: Slaid v. Evergreen Indem. Ltd., 32,363 (La.App. 2 Cir. 10/27/99), 745 So.2d 793; Jackson v. Sears Authorized Retail Dealer Store, 36,166 (La.App. 2 Cir. 6/12/02), 821 So.2d 590; Wilson v. State Farm Fire and Casualty Insurance Co., 94-1341, 94-1342 (La.App. 3 Cir. 4/5/95), 654 So.2d 385; Adams v. Owens-Corning Fiberglas Corp., 2004-1589 (LaApp. 1 Cir. 9/23/05), 923 So.2d 118. The scope of this duty was explained by our colleagues on the First Circuit:
A non-manufacturer/seller in some instances has a duty to warn a purchaser of defects and/or dangerous propensities in the products he sells. In the case of a defective product, i.e., one which is unreasonably dangerous in normal use, the non-manufacturer/seller can be held hable for damages in tort only if he knew or should have known that the product was defective and failed to declare the defect to the purchaser. Hopper v. Crown, 555 So.2d 46, 48 (La.App. 1st Cir.1989), reversed on other grounds, 558 So.2d 1117 (La.1990); Usee also, Thomasson v. A.K. Dumin Chrysler-Plymouth, Inc., 399 So.2d 1205, 1208 (La.App. 1st Cir.1981).
Adams, 2004-1589, p. 6, 923 So.2d at 123; see also, Slaid, 745 So.2d at 797.
As reflected by this jurisprudence, the non-manufacturer seller’s duty to warn the purchaser depends upon two factors: a defective product (one that is unreasonably dangerous for normal use), and whether *678 the seller knew or should have known of the defect. In this case, because Ms. Alexander did not purchase the vehicle from Lakeside, the general law of negligence would add a third required factor: that Ms. Alexander must fall within the ambit of those persons to whom the seller owes such a duty. See, e.g., Gammill v. Invacare Corp., 2008-0833 (La.App. 4 Cir. 12/17/08), 2 So.3d 557, 559 wherein we found there was no “ease of association” between the plaintiffs harm and the defendant’s conduct sufficient to impose a duty.
In support of its motion for summary judgment in the trial court, Lakeside asserted that the plaintiffs, who have the burden of proof at trial, lack factual support for all three required elements. Because all these elements must be present for a duty to exist, Lakeside needed only to show the absence of one of them to prevail on its motion.
On the issue of defectiveness, it is undisputed that Ms. Alexander’s 1995 Corolla contained the original caution label required by the NHTSA at the time it was manufactured, which read, in pertinent part:
CAUTION TO AVOID SERIOUS INJURY:
• FOR MAXIMUM SAFETY PROTECTION IN ALL TYPES OF CRASHES, YOU MUST ALWAYS WEAR YOUR SAFETY BELT.
• DO NOT INSTALL REARWARD FACING CHILD SEAT IN ANY FRONT PASSENGER SEAT POSITION
• DO NOT SIT OR LEAN UNNECESSARILY CLOSE TO THE AIRBAG
• DO NOT PLACE ANY OBJECTS OVER THE AIRBAG OR BETWEEN THE AIRBAG AND YOURSELF
• SEE THE OWNER’S MANUAL FOR FURTHER INFORMATION AND EXPLANATIONS
| ^Subsequently, the NHTSA[2] issued a “Final Rule” specifying that vehicles manufactured after February 25, 1997 must have new air bag warning labels containing the following pertinent language:[3]
! WARNING
DEATH or SERIOUS INJURY can occur
• Children 12 and under can be killed by the air bag
• The BACK SEAT is the SAFEST place for children.
• NEVER put a rear-facing child seat in the front.
• Sit as far back as possible from the air bag.
• ALWAYS use SEAT BELTS and CHILD RESTRAINTS.[4]
It is undisputed that the Final Rule did not apply to Ms. Alexander’s vehicle, which was manufactured in December of 1994.
In support of its motion, Lakeside submitted both the old and new labels to show *679 that the 1997 revised airbag “warning” label applicable to Ms. Alexander (an allegedly short-statured driver) was substantially similar to the airbag “caution” label contained in her 1995 Corolla. Supporting Lakeside’s assertion in this regard is a statement contained in the Final Rule: “NHTSA continues to believe that the word choice for the heading [“warning” as opposed to “caution”] will not change the effectiveness of the label.” Lakeside also pointed out the plaintiffs’ admission in its pleadings that at the time of the accident, the airbag in Ms. Alexander’s vehicle functioned as designed. Lakeside therefore met its Article 966 burden of pointing out the lack of evidence to support the plaintiffs’ contention that the airbag warning label in Ms. Alexander’s vehicle was inadequate or that the lack of a new label rendered the vehicle defective.
lfiTo defeat summary judgment on this issue, the burden then shifted to the plaintiffs to produce factual support sufficient to establish that they would be able to meet their evidentiary burden at trial of proving the existence of a defect. See La. C.C.P. art. 966 C. The plaintiffs clearly failed to meet this burden.
This record is devoid of any evidence, from experts or fact witnesses, by way of affidavits or deposition testimony, suggesting that the lack of the 1997 revised airbag warning labels in Ms. Alexander’s vehicle rendered the vehicle itself or the air bags defective or unreasonably dangerous for normal use. Moreover, the plaintiffs have not cited any statutory or jurisprudential authority establishing that the presence of first generation airbags with the original caution labels constituted a defect that could be cured by providing more stringent warning labels. The mere fact that revised airbag warning labels were developed and were required in newly manufactured vehicles does not render older vehicles with first generation airbags and original caution labels defective.[5]
Without a defective condition, the other elements required to impose a duty — that is — whether Lakeside had knowledge, and whether Ms. Alexander was within the ambit of those persons to whom Lakeside’s duty to warn would extend, are irrelevant. Thus, the trial court assumed, for the purposes of deciding the summary judgment motion, that Lakeside possessed the requisite knowledge, yet still found that Lakeside had no duty to warn Ms. Alexander because Lakeside had proved the absence of at least one of the other required elements.
In creating the duty that the majority finds applicable here, this court has departed from Louisiana law and jurisprudence by ignoring the complete absence from this record of any evidence showing that the presence of the airbag warning label authorized by the federal government for Ms. Alexander’s vehicle, rather |7than the newer label designed for subsequently-manufactured vehicles, rendered her vehicle defective. I know of no provision of Louisiana law that would impose upon a seller a duty to warn of any condition short of a product defect. I also note that the plaintiffs have failed to cite any jurisprudence, from Louisiana or any other state, holding a non-manufacturer seller of a car liable for failing to warn about first-generation airbags.
For these reasons, I would affirm the judgment of the trial court. Accordingly, I respectfully dissent.

. Federal Motor Vehicle Safety Standard 208

. National Highway Traffic and Safety Administration

. See 61 FR 60206. The Final Rule was promulgated pursuant to FMVSS 208. According to this regulation, a person may not manufacture for sale, sell, offer for sale, introduce or deliver for introduction in interstate commerce, or import into the United States, any motor vehicle or motor vehicle equipment manufactured on or after the date an applicable motor vehicle safety standard prescribed under this chapter takes effect unless the vehicle or equipment complies with the standard and is covered by a certification issued under section 30115 of this title. 49 U.S.C. sec. 30112(a)(1). See footnote 5, supra.

.The label also contained an illustration of an infant strapped into a front-facing child safety; the picture was inside a circle with a diagonal slash across it, a universal symbol for something that is banned.

. Analogously, subsequent remedial measures are not admissible to prove negligence or culpability in a civil case. See La. C.E. art. 407.